RECEIVED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 2 / 6 / 09
BY DM

**UNITED STATES DISTRICT COURT**

**FOR THE WESTERN DISTRICT OF LOUISIANA**

**SHREVEPORT DIVISION**

THE NEWMAN MARCHIVE
PARTNERSHIP

versus

KEITH HIGHTOWER in his official
capacity as Mayor of the City of
Shreveport and THE CITY OF
SHREVEPORT, LOUISIANA

CIVIL ACTION NO. 06-1664
JUDGE TOM STAGG

---

## MEMORANDUM RULING

Before the court are three motions for summary judgment. The first and third were filed by the defendants, Keith Hightower, former Mayor of the City of Shreveport ("Mayor Hightower"), and the City of Shreveport (sometimes collectively referred to as "the defendants") seeking dismissal of the suit in its entirety. See Record Documents 10 & 35. The second, a motion for partial summary judgment, was filed by the plaintiff, The Newman Marchive Partnership, Inc. ("Newman"). See Record Document 22. For the reasons stated below, the defendants' motions for summary judgment are **GRANTED** and Newman's motion for partial summary judgment is **DENIED**.

1

# I. BACKGROUND

The events giving rise to this litigation began almost fifteen years ago when Newman entered into two architectural contracts with the City of Shreveport ("the City") to renovate Independence Stadium and to develop a "Campus Plan" for governmental facilities. After several productive years, the relationship soured; in 2002, Newman sued the City in state court on the Independence Stadium contract, claiming an unpaid balance of $248,394.51. Newman amended its petition on several occasions, eventually seeking additional termination expenses of $50,816.90 and lost profits of $1,142,607.14. After trial, the jury awarded Newman $251,304.34, but it did not specifically break down the award.

Ruling on a "Motion to Fix Form and Content of Judgment," the trial judge stated that "the judgment should not reflect any interest from any due date or from date of judicial demand." Record Document 43, Ex. B. Newman appealed, and the Louisiana Second Circuit Court of Appeal ("Second Circuit") amended the judgment to include legal interest from the date of judicial demand. See Newman Marchive P'ship, Inc. v. City of Shreveport, 923 So.2d 852 (La. App. 2d Cir. 2006), writ denied, 930 So.2d 983 (La. 6/23/2006). This judgment (the "Stadium Judgment") became final and definitive on June 23, 2006.

Newman also sued the City on the Campus Plan contract, which resulted in

2

a verdict for Newman in the amount of $476,146.89. Both parties appealed, and the Second Circuit reduced the award to $414,200.45. See Newman Marchive P'ship, Inc. v. City of Shreveport, 944 So.2d 703 (La. App. 2d Cir. 2006), writ denied, 949 So.2d 448 (La. 3/9/2007). This judgment (the "Campus Plan Judgment") became final and definitive on March 9, 2007.

In 1995, the City created a Risk Management Fund to pay claims presented against it by third parties and employees in workers compensation. See Record Document 10, Ex. E, Ord. No. 58 of 1995. The City delegated authority to a Risk Management Committee to determine what, if any, amounts should be paid out of this fund. See id. On September 11, 2006, the Risk Management Committee met and voted in favor of a motion made by committee member Ken Antee, Chief Administrative Officer ("CAO") of the City, and seconded by Ramon Lafitte, City Attorney, to unconditionally tender only the principal amount of the Stadium Judgment awarded to Newman. The motion passed four to zero with one abstention and one member absent. See Record Document 10, Ex. F.

Despite the Risk Management Committee's vote to pay the principal amount of the Stadium Judgment, payment was not forthcoming. As a result, Newman petitioned the trial court on September 19, 2006 for a writ of mandamus to compel the City to pay the judgment. See Record Document 10, Ex. G. The trial judge

3

ordered an Alternative Writ directing the City to pay the Stadium Judgment or show cause why the alternative writ should be recalled. See id. On September 22, 2006, the City made an unconditional tender of the principal amount of the judgment; however, it refused to pay judicial interest of $70,301.66.[1] On September 28, 2006, the trial judge recalled the alternative writ and dismissed Newman's petition for Writ of Mandamus. See id. at Ex. H. The trial judge stated that "based on the evidence in this case at this time I find that there is an element of discretion remaining in this case and that mandamus is not appropriate at this time." Record Document 30, Ex. 9 at 44.

Newman appealed the dismissal of its petition for Writ of Mandamus, and the Second Circuit affirmed. On rehearing, a five-judge panel reversed. See Newman Marchive P'ship, Inc. v. City of Shreveport, 962 So.2d 1075 (La. App. 2d Cir. 2007). The City appealed to the Louisiana Supreme Court for a writ of certiorari,

_____

[1]The defendants claim that the Risk Management Committee was responsible for the decision not to pay Newman judicial interest. The court notes Judge Fred C. Sexton's opinion from the Second Circuit. There, he stated: "I do not accept the Mayor's position that the decision not to pay the interest was made by the Risk Management Committee. It is clear from the testimony of Mr. Tom Cody, Risk Manager for the City of Shreveport, that the question of whether to pay this judgment at all was not taken before the Risk Management Committee until approximately one week before the writ of mandamus was filed herein. A review of the previous litigation [] causes me to believe that the Mayor made the political decision not to pay the interest on this judgment and the Risk Management Committee simply ratified that decision." Newman Marchive P'ship, Inc. v. City of Shreveport, 962 So.2d 1075, 1079 (La. App.2d Cir. 2007)(Sexton, J., concurring).

which was granted. See <u>Newman Marchive P'ship, Inc. v. City of Shreveport</u>, 967 So.2d 527 (La. 11/21/07). The Supreme Court reversed, dissolved the writ of mandamus, and dismissed Newman's petition. See <u>Newman Marchive P'ship, Inc. v. City of Shreveport</u>, 979 So.2d 1262 (La. 4/8/08). In its ruling, the court recognized that its holding effectively provided Newman a right without a remedy. See <u>id.</u> at 1270.

On September 26, 2006, shortly after Mayor Hightower refused to pay judicial interest on the Stadium Judgment, the Shreveport City Council adopted Ordinance 153 of 2006 ("the Interest Provision"). See Record Document 22, Ex. 7. The ordinance provided in pertinent part: "It is further the policy of the city to pay final judgments of Louisiana courts, but not to pay interest on said judgments." <u>Id.</u>

During the pendency of the state court litigation, Newman filed this federal suit against the City under 42 U.S.C. § 1983. See Record Document 1. In its complaint, Newman alleged a violation of the Equal Protection Clause of the Fourteenth Amendment. Newman alleged, "By refusing to pay Plaintiff the judicial interest awarded in the final Judgment, the Mayor and City have acted in an arbitrary and capricious manner and have treated Plaintiff differently than other similarly situated judgment creditors who have received payment of judicial interest awarded to them."

5

Id. at 3. Newman also alleged that the City retaliated against it for "having exercised its constitutional right to seek judicial relief." Id. at 5.

Newman then amended its complaint, alleging that the Interest Provision of Section 26-171(a) of the City's Code of Ordinances violates the Takings Clause of the Fifth Amendment and the Louisiana Constitution. See Record Document 17. The amended complaint also clarified that Newman was suing Mayor Hightower in both his official and individual capacities. See id. In response, the City filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which was referred to Magistrate Judge Karen Hayes for a Report and Recommendation. See Record Document 18.

In a judgment adopting the recommendation of Magistrate Judge Hayes, this court granted the City's motion to dismiss Newman's claim under the Takings Clause, but denied the motion insofar as it sought dismissal of Newman's claims against Mayor Hightower in his individual capacity and its claims under the Louisiana Constitution. See Record Document 42. This court then upset all scheduling order deadlines and ordered the parties to file supplemental briefs addressing several key issues. See Record Document 40. Having received the supplemental briefs and reviewed the entire record, the issues are ripe for consideration.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 263 (5th Cir. 2002). If the movant demonstrates the absence of a genuine issue of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir. 2004) (citations and quotations omitted). Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co. Inc., 402 F.3d 536, 540 (5th Cir. 2005). "[T]he nonmovant cannot satisfy [its] burden with conclusory allegations, unsubstantiated

assertions, or only a scintilla of evidence." <u>Freeman v. Tex. Dep't of Criminal Justice</u>, 369 F.3d 854, 860 (5th Cir. 2004). However, when ruling on a motion for summary judgment, "doubts are to be resolved in favor of the nonmoving party, and any reasonable inferences are to be drawn in favor of that party." <u>Evans v. City of Bishop</u>, 238 F.3d 586, 589 (5th Cir. 2000).

**B.   Equal Protection Clause Claims.**

Newman first argues that the defendants violated its rights under the Equal Protection Clause of the Fourteenth Amendment when they failed to pay judicial interest on the Stadium Judgment. <u>See</u> Record Document 1 at 4.

The purpose of the equal protection clause is "to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074-75 (2000) (quotations and citations omitted). Essentially, similarly situated persons should be treated similarly. <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439, 105 S. Ct. 3249, 3254 (1985). An equal protection claim may be asserted by a "class of one" where it is alleged that the plaintiff has been intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment. <u>See</u> <u>Vill. of Willowbrook</u>, 528 U.S. at 564, 105

S. Ct. at 1074.

The Fifth Circuit analyzes equal protection clause claims under a two-pronged test. See Whiting v. Univ. of Southern Miss., 451 F.3d 339, 348 (5th Cir. 2006). First, the plaintiff must prove that he was "intentionally treated differently from others similarly situated." Id. Second, the plaintiff must prove that there was no "rational basis for the difference in treatment." Id. Finally, if the plaintiff is not a member of a suspect or protected class, rational basis scrutiny will apply. See Delahoussaye v. City of New Iberia, 937 F.2d 144, 149 (5th Cir. 1991).

## 1. Differential Treatment.

Here, Newman's first burden is to prove that it was treated differently than other similarly situated judgment creditors. Newman points to interrogatory responses which reveal that the City paid sixteen final and definitive money judgments rendered by state and federal courts in the years preceding this litigation. See Record Document 22, Ex. 5. Newman also argues that the Risk Management Committee never met to confer, review, examine, or discuss the conduct or activities of any other judgment creditors. See id. at 10. Newman concludes that because it was a similarly situated judgment creditor whose "claim" was both referred to the Risk Management Committee and also not paid in full, it was treated differently than the other sixteen judgment creditors.

In opposition, the defendants argue that because there was another judgment creditor, namely Whitaker Construction Company, that received similar treatment to that of Newman, Newman was not treated differently than others similarly situated. See Record Document 30 at 3. This argument is unavailing for several reasons. First, Whitaker was paid the entirety of its judgment, including judicial interest. See Record Document 1, Ex. A. Second, even if Newman and Whitaker were treated similarly, Newman was still treated differently than the other sixteen judgment creditors mentioned above.

Based on a thorough review of the record, it is clear that the defendants intentionally treated Newman differently than several other similarly situated judgment creditors. The City had a longstanding practice of paying final judgments in full, without referring them to the Risk Management Committee. See Record Document 22, Ex. 5. The City also had a longstanding policy of complying with the reasoned decisions and orders of our state judiciary. The Second Circuit awarded Newman $263,674.10 plus legal interest, and the Supreme Court of Louisiana denied writs. Mayor Hightower's refusal to pay the legal interest, and his decision to refer this "claim" to the Risk Management Committee varied from the City's longstanding policy. Accordingly, this court finds that Newman proved the first prong of the equal protection analysis.

## 2.    Rational Basis.

To satisfy the second prong of an equal protection claim, the plaintiff must prove that there was no "rational basis for the difference in treatment." Whiting, 451 F.3d at 348. The plaintiff's burden is steep, as an equal protection claimant bears the burden of negating "any reasonably conceivable state of facts that could provide a rational basis for the classification." Bd. of Trs. of the Univ. of Ala. v. Garrett, 531 U.S. 356, 367, 121 S. Ct. 955, 964 (2001). "[E]qual protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313, 113 S. Ct. 2096, 2101 (1993). Borrowing language from a substantive due process analysis, "[t]he rational basis test requires not only a legitimate state interest, but also that the government action is rationally related to furthering that interest." Mikeska v. City of Galveston, 451 F.3d 376, 380 (5th Cir. 2006).

### a.    Stadium Judgment.

To meet the second prong of its equal protection claim, Newman cites deposition testimony in which CAO Ken Antee told Mayor Hightower that, "We ought not to pay the bastard." See Record Document 22, Ex. 1 at 30. Newman also argues that "the City's differential treatment of Newman was simply irrational or arbitrary." Record Document 22 at 14. Finally, Newman attempts to negate the

11

rational reasons proffered by the City for treating Newman differently.

To prove their rational basis defense, the defendants argue that Mayor Hightower's "refusal to pay Newman any interest on the Independence Stadium judgment is rationally based on the conditions and terms of the contract Newman and the City entered into in 1994." Record Document 43 at 5. This court disagrees. The relevant contractual language reveals that Newman agreed to "[o]mit the requirement for the City to pay interest on overdue accounts." Record Document 43, Ex. A. After evaluating this sentence, the Second Circuit stated: "We do not read the parties' contractual waiver of conventional interest *on overdue accounts* as anything more than that." Newman Marchive P'ship, Inc. v. City of Shreveport, 923 So.2d 852, 861 (La. App. 2d Cir. 2006) (emphasis in original). Clearly, "the Newman Partnership did not express its intent to waive legal or judicial interest once it filed suit." Id. This court agrees with the Second Circuit's analysis of the relevant contractual language and finds that Mayor Hightower's refusal to pay judicial interest, which occurred after the above-cited decision, could not have been rationally based on the contractual provision.

Next, the defendants argue that the state district court's ruling, which specifically excluded the payment of interest, forms a rational basis for Mayor Hightower's refusal to pay judicial interest. See Record Document 43 at 7. Again,

12

this court disagrees. Not only was this ruling reversed, but it was reversed on the exact issue of whether Newman was owed judicial interest. As such, it would be completely irrational to rely on it for the proposition that the City did not owe judicial interest. It is quite disingenuous that the defendants would seek refuge in a reversed district court ruling, while simultaneously disregarding the ruling of the Second Circuit.

The defendants also state that "the action taken by the Risk Management Committee and subsequent decision by the Shreveport City Council denying the payment of interest is a legitimate state interest." Record Document 10 at 8. This statement is both conclusory and incorrect, as the action taken by the defendants was a "government action" rather than a legitimate state interest. It seems that the legitimate state interest, purportedly furthered by such government action, was to protect the taxpayers' funds.

Putting aside the two debunked reasons for Mayor Hightower's refusal to pay judicial interest, the defendants correctly state that the "City and Mr. Hightower are not required to show a universally-accepted, 100% correct reason for denying Newman its interest payments, but only one that is rationally based." Record Document 43 at 11. Based on a review of the entire record, this court finds that Mayor Hightower's refusal to pay judicial interest on the Stadium Judgment was

rationally based on several grounds.

First, Mayor Hightower's refusal to pay judicial interest was rationally based on his goal of protecting taxpayer money. During his deposition, Mayor Hightower was asked if he believed that it would be in the best interest of the taxpayers to avoid paying judicial interest awarded by the final judgment. See Record Document 22, Ex. 11, pg. 18. Mayor Hightower responded, "I do believe that to be the case if there was precedence [sic] and statutes out there that said that should not be done." Id. Mayor Hightower also stated, "Again, I think what we tried to do all along was to protect the taxpayers' money. That's the reason we were in this lawsuit from day one." Id.

In addition to Mayor Hightower's testimony, CAO Ken Antee's testimony reveals a similar motive. When asked to identify the reasons the Risk Management Committee refused to pay Newman judicial interest, he responded: "First, we don't want to pay a penny out more than what is necessary. Our job is to protect the taxpayers' dollars." Record Document 22, Ex. 1 at 38. He further stated that Mayor Hightower's refusal "established a good policy to manage the taxpayers' dollars in the best way." Id. at 39. Based on a review of the above cited deposition testimony, it is evident that Mayor Hightower's decision not to pay judicial interest was rationally based on his desire to protect the taxpayers' money.

Second, and implicit in the above quotes, Mayor Hightower's decision was also

rationally based on his knowledge that judgments against the City cannot be judicially enforced.[2] Mayor Hightower's deposition testimony reveals that Mr. Antee informed him that the City could not be forced to pay the judgment. See Record Document 22, Ex. 11, pg. 18. Armed with this knowledge, Mayor Hightower refused to "pay the bastard," relying on established jurisprudence as a rational basis for his decision.

### b.    Campus Plan Judgment.

In its amended complaint, Newman alleges that "[b]y refusing to pay Plaintiff the judicial interest awarded in the final Campus Plan Judgment, the Mayor and City have acted in an arbitrary and capricious manner and have treated Plaintiff differently than other similarly situated judgment creditors who have received payment of the full principal and judicial interest awarded to them." Record Document 17 at 6. In its defense, the defendants argue that "[a]s to all judgment creditors after the enactment of Ordinance No. 153 of 2006, the City has not paid any legal interest based upon amendment to Section 26-171 [] of the City of Shreveport Code of Ordinances." Record Document 30 at 5.

Newman argues that the City did not properly adopt the Interest Provision, that it is not applicable to the Campus Plan judgment, and that no ordinance can

_____

[2]This was the subject of intense litigation between the same parties, which was recently resolved by the Supreme Court of Louisiana. See Newman Marchive P'ship, Inc. v. City of Shreveport, 979 So.2d 1262 (La. 4/8/08).

retroactively change the substantive right of a litigant.  See Record Document 22 at 11, 12.  The court need not reach the merits of these arguments.  As discussed above, Mayor Hightower's decision not to pay judicial interest on the Stadium Judgment was rationally based on several factors.  These factors apply equally to the Campus Plan Judgment.  Thus, the defendants need not articulate any additional justification for refusing to pay judicial interest on the Campus Plan judgment.

Although the court sympathizes with Newman, it has not established a genuine issue of material fact with respect to the second prong of its equal protection claim; therefore, the defendants' motion for summary judgment regarding Newman's equal protection claim is **GRANTED**.

## C.    Retaliation.

According to Newman, the "City's and Mayor's refusal to pay Plaintiff the final [Stadium] Judgment's interest is designed to punish Plaintiff for having exercised its constitutional right to seek judicial relief or to intimidate or chill its exercise of that right in the future...."  Record Document 1 at 5-6.  Access to the courts is a "constitutionally protected fundamental right and one of the privileges and immunities awarded citizens under Article IV [of the Constitution]and the Fourteenth Amendment."  Bayou Fleet, Inc. v. Alexander, 234 F.3d 852, 857 (5th Cir. 2000).  "Official reprisal for protected speech 'offends the Constitution [because] it threatens

16

to inhibit exercise of the protected right.'" Hartman v. Moore, 547 U.S. 250, 256, 126 S. Ct. 1695, 1701 (2006). "[I]f government officials were permitted to impose serious penalties in retaliation for an individual's speech, then the government would be able to stymie or inhibit [the] exercise or right in the future and thus obtain indirectly a result that it could not command directly." Keenan v. Tejada, 290 F.3d 252, 258 (5th Cir. 2002).

Newman argues that it should prevail on its retaliation claim as it satisfied the four-elements test from Reeves v. Wood, 206 F. App'x. 368, 369 (5th Cir. 2006). The requisite elements are: "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the [plaintiff] for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."[3] Id.; McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998). Further, causation requires a showing that "but for the retaliatory motive the complained of incident ... would not have occurred." Id.

Assuming without finding that Newman proved the first two elements of its retaliation claim, the final two elements require additional analysis. To support the third element, Newman stated that "[t]he retaliatory adverse acts include (1) the delay

---

[3] A review of recent Fifth Circuit case law reveals that the McDonald v. Steward four-part test is generally used to analyze prisoners' claims for lack of access to the courts. Under the present facts, the three-part test in Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002) could be applicable to Newman's claim against Mayor Hightower. If analyzed under this three-part test, Newman would still be unable to establish the second and third elements.

in paying Newman the principal portion of the Stadium Judgment for over 3 months and (2) the refusal to pay any portion of the judicial interest awarded by the courts." Record Document 22 at 23. The defendants responded by noting that "the plaintiff has no right to the payment of the whole judgment value, he only has right to obtain the judgment." Record Document 30 at 14.

First, there is no indication that a three month delay in paying a judgment is an adverse act, let alone an abnormal practice of the defendants. Second, when Mayor Hightower refused to pay judicial interest on either judgment, Newman was not deprived of a substantive or vested property right. "The Supreme Court determined long ago ... that the property right created by a judgment against a government entity is not a right to payment at a particular time but merely the recognition of a continuing debt of that government entity." Minton v. St. Bernard Parish Sch. Bd., 803 F.2d 129, 132 (5th Cir. 1986). As the two judgments did not give Newman a right to payment, Mayor Hightower's refusal to pay judicial interest can not be considered a retaliatory adverse act.

Similarly, the court is guided by Lewis v. Casey, 518 U.S. 343, 349, 116 S. Ct. 2174, 2179 (1996), wherein the Supreme Court held that to obtain relief for denial of access to the courts, a plaintiff must demonstrate actual injury. Section 1983 is a statute that requires an actual injury (here, the deprivation of a constitutional right)

to be actionable. See Keenan v. Tejada, 290 F.3d 252, 259 (5th Cir. 2002). While not directly on point, the Keenan court's logic is persuasive. Newman's position as a judgment creditor, with no rights of enforcement against the City, was unchanged after Mayor Hightower refused to pay the judicial interest. Accordingly, Newman did not suffer an actual injury when it did not receive the interest payment.

The fourth element of causation articulated in McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998) is equally fatal to Newman's retaliation claim. Assuming that Newman had met the first three elements, the burden would shift to the City to prove that it would have acted in the same manner absent the protected activity. See Hartman v. Moore, 547 U.S. 250, 260, 126 S. Ct. 1695, 1704 (2006). As explained in Hartman:

> If there is a finding that retaliation was not the but-for cause of the discharge, the claim fails for lack of causal connection between unconstitutional motive and resulting harm, despite proof of some retaliatory animus in the official's mind. (citation omitted). It may be dishonorable to act with an unconstitutional motive and perhaps in some instances be unlawful, but action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway.

Id.

As discussed above, deposition testimony reveals that Mayor Hightower refused to pay judicial interest in an effort to protect the taxpayers' money. See Record Document 22, Ex. 11 at 18. Mayor Hightower was also aware that state court

19

judgments are unenforceable in Louisiana. In addition, the City has not paid judicial interest on any judgment since this dispute arose. See id. These facts indicate that Newman's litigation tactics were not the but-for cause of Mayor Hightower's refusal to pay judicial interest. As Newman cannot meet the but-for causation element of its retaliation claim, its motion for summary judgment must be **DENIED**.

### III. CONCLUSION

Based on the foregoing analysis, the court finds that Mayor Hightower had a rational basis for refusing to pay judicial interest on both the Stadium and Campus Plan Judgments. The court also finds that under the relevant summary judgment rules, Newman did not suffer a retaliatory adverse act when Mayor Hightower refused to pay judicial interest and did not establish the requisite but-for causation. As Newman failed to establish a genuine issue as to whether the complained of conduct deprived it of a constitutional right, its section 1983 claim must fail.

Accordingly, Newman's motion for partial summary judgment is **DENIED**, and the defendants' motions for summary judgment are **GRANTED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this _6th_ day of February, 2009.

JUDGE TOM STAGG